# Weiner *v.* North Penn Bank Inc., Appellant.

*Banks and banking—Dishonor of check—Damages—Substantial damages.*

Where a bank, without right, refuses to pay the check of its depositor merely nominal damages are inadequate to heal the injury, and substantial damages may and should be awarded.

Where a person in business of the name of "J. Weiner" deposits in his bank $350 which is placed to his credit in his passbook, but is wrongly credited to the account of "J. Werner," another depositor, and subsequently "J. Weiner" draws two checks in the course of business which are dishonored, although his account would have been sufficient to meet them if his deposit had been properly credited, such depositor may recover substantial damages, although he shows no precise money injury, and a verdict and judgment for $1,000 against the bank in his favor will be sustained.

In an action against the bank on such a claim the judgment for

WEINER v. NORTH PENN BANK INC., Appellant. 291

the plaintiff will not be reversed because the judge in his charge said that: "A bank or trust company is, under the law, what is known as a quasi public institution."

Submitted Oct. 12, 1916.   Appeal, No. 124, Oct. T., 1916, by defendant, from judgment of Municipal Court, Philadelphia Co., Jan. T., 1916, No. 342, on verdict for plaintiff in case of Jacob Weiner v. North Penn Bank. Before ORLADY, P. J., PORTER, HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ.   Affirmed.

Trespass to recover damages for dishonoring checks.

KNOWLES, J., charged in part as follows:

It appears from the evidence in this case that the plaintiff has been in the business of boots and shoes in the City of Philadelphia for the last sixteen years and that he had been a depositor at the North Penn Bank for the last eighteen months prior to the date of December 27, 1915, when he deposited three hundred and fifty dollars in cash at that bank.   He tells you that he went to this bank with the deposit slip that was made out by his daughter, that he asked the receiving teller whether or not the name was properly written, because three hundred and fifty dollars was an important sum to him, and that the receiving teller said "Yes, that is right, J. Weiner," and he handed in his passbook and the deposit was entered in his passbook.

Then, it is admitted, gentlemen of the jury, that after this deposit was made and credited to someone by the bank, the bank refused payment of two checks drawn by the daughter of the plaintiff, one check for forty-three dollars to pay the rent due to the landlord, and another check for sixty-one dollars to pay an account which the plaintiff owed a shoe dealer in Massachusetts.

*    *    *    *    *    *    *    *    *

The cashier tells you that the plaintiff said to him that his daughter had made out the deposit slip and had deposited the money.   They both agreed, the plaintiff and

the defendant, that at that conversation there was another gentleman present by the name of Mr. Samuel Kogan, and he tells you that nothing was said at that conversation about who made out this deposit slip. Those are questions of fact for you gentlemen to determine. However, that may be, if the plaintiff did tell Mr. Moyer, the cashier of the defendant bank, that his daughter made out the deposit slip, the daughter was just recalled and was on the stand and said the particular deposit slip which had been offered in evidence by the defendant and which was shown to the daughter, she tells you that she did not make out that deposit slip; that she never saw it before and that the handwriting is not the handwriting of any member of the plaintiff's family. She also wrote the name of J. Weiner on a separate piece of paper in what she tells you is her ordinary and usual handwriting. You will have that with you when you go out to determine this case.

The plaintiff was then recalled and he tells you that he never saw this deposit slip before. Now, of course, gentlemen, if this plaintiff or someone authorized by him did not write J. Werner at the top of this deposit slip, he cannot be imputed with any carelessness. That is a question of fact for you gentlemen to determine.

It is admitted here that these two checks were refused payment.

[Now, gentlemen, a bank or a trust company is under the law what is known as a quasi public institution. It is the duty of such an institution to receive the moneys belonging to its depositors and there is something more than an expressed contract between the depositors, and the bank or trust company by which the trust company is to pay out this money. In other words, there is an implied contract here which is entered into by reason of public policy. It is not safe to say that a bank or a trust company may receive money belonging to depositors and then at its own choice decline to pay out such moneys and then say that the only damage suffered is the actual

loss of that deposit.  That is not the law, gentlemen. There is this implied contract into which public policy enters, and the court instructs you as a matter of law that if you believe this bank knew or ought to have known that this deposit of December 27, 1915, was made by the plaintiff in this case, then that plaintiff is entitled to substantial damages.  Of course, the amount rests entirely with you.  There is something more than an ordinary breach of contract in such cases, where a bank has received money belonging to someone else and refuses to pay out that money as directed.]  (7)  It is a question of fact for you to determine whether or not this deposit slip was made out by the plaintiff in this case or by anyone authorized by him.  Of course, if the plaintiff is careless, your verdict must be for the defendant.  You are to determine that question from the evidence as you yourselves recollect it.  The only evidence, as the court recollects it, as to this deposit slip is that it was found in the bank and the other evidence that the plaintiff said to the cashier of the bank, at the conversation which has been told to you, that when the three hundred and fifty dollars was deposited, his daughter made out the deposit slip and deposited it.  Of course, if you think the daughter made out this slip, that of itself is evidence of carelessness, for this name is Werner, as it appears to be, and the plaintiff cannot recover.

Verdict and judgment for plaintiff for $1,000.  Defendant appealed.

*Errors assigned,* among others, was (7) portion of charge as above quoting it, and (10) in directing that if plaintiff should not file a remittitur for all above $500 a new trial should be granted, and that unless $500 and costs should be paid within ten days judgment might be entered on the verdict of $1,000.

*A. E. Hurshman,* for appellant.—A bank is not a quasi public institution:  Chicago, Etc., Ins. Co. v. Stanford,

28 Ill. 168; Thatcher v. State Bank of New York, 5 Sanford, N. Y. 121; Northern Liberties Bank v. Jones, 42 Pa. 536.

A depositor does not occupy a different position in his relationship with the bank than that of any other creditor and debtor: Burt v. North Philadelphia Trust Co., 45 Pa. Superior Ct. 320.

*F. Carroll Fow,* for appellee.—Cited as to the necessity of proving actual damage: Patterson v. Marine National Bank, 130 Pa. 419; Birchall v. Third National Bank, 15 W. N. C. 174; Atlantic National Bank v. Davis, 96 Ga. 334; 23 S. E. 190.

Cited as to a bank being a quasi public institution: Patterson v. Marine National Bank, 130 Pa. 432.

Cited as to the verdict being excessive: White v. Columbia & Montour Electric Ry. Co., 215 Pa. 462; Jones v. Penna. Co., 60 Pa. Superior Ct. 438.

Cited as to the authority of the lower court to modify or supersede conditions, under which new trial would be granted: Torak v. Philadelphia & Reading Ry. Co., 60 Pa. Superior Ct. 248.

OPINION BY HEAD, J., December 18, 1916:

The verdict of the jury has established the fact that on December 27, 1915, the plaintiff, a depositor in the defendant bank, made a cash deposit of $350.00 which was regularly placed to his credit in his passbook. Shortly thereafter the plaintiff drew, against said deposit, two checks aggregating in amount about one hundred dollars. When presented at the bank payment of each check was refused on the ground the maker had no money on deposit to meet them. Thereupon this suit was brought to recover damages resulting from the defendant's breach of duty.

The defendant offered evidence to show that the deposit made by plaintiff had been mistakenly placed to the credit of "J. Werner," another depositor, because of

the manner in which the deposit slip was made out. The question of fact was fairly submitted to the jury and their verdict has declared the plaintiff was in no way to blame for the mistake. The refusal to pay the checks was therefore an unjustifiable breach of defendant's duty to the plaintiff, and in any aspect a verdict for nominal damages at least would follow. The second assignment of error must therefore be dismissed. No special mention need be made of the 3d, 4th, 5th, 6th and 8th assignments for obvious reasons. We shall confine our attention chiefly to the 7th assignment which raises the important question in the case.

We take it to be now the settled law of Pennsylvania, that where a bank, without right, refuses to pay the check of its depositor, merely nominal damages are inadequate to heal the injury and substantial damages may and should be awarded. By this expression, "substantial damages," as used in the cases, the courts have not meant the jury were at liberty to assess punitive damages in cases exhibiting no trace of wantonness, malice, intentional injury or gross negligence. "Substantial damages" as we are dealing with the term, are within the zone of compensatory damages that lies between nominal damages on the one side, punitive damages on the other.

There is a solid basis for the doctrine that in a case like the one at bar the plaintiff should have more than nominal damages even though he does not lay and cannot prove any actual loss precisely measurable in dollars and cents. In the modern world the financial credit of a man, particularly of one engaged in commercial pursuits, is a much prized and valuable asset. Although laboriously built it is easily destroyed. The banks of the country, through which the great volume of our commercial business is transacted, have a deserved reputation for accuracy and care in the conduct of their affairs. Hence when the check of a depositor is refused at the counter of his bank, that portion of the commercial world, greater or less, that comes within the sphere of his

transactions, promptly imputes the blame to him rather than to the bank. This results in an injury to him none the less real and substantial because he may be unable to prove its exact extent. In such cases, as in many others where affirmative proof of the precise money value of an injury, which is to be compensated, ex necessitate, in damages, is difficult if not impossible, much must be left to the common sense and sound discretion of the jury. Naturally they might expect the aid of the trial judge in defining the true limitations within which their inquiry should be confined.

Thus understood no legitimate complaint can be made of the language used by Chief Justice Paxson in Patterson v. Marine Bank, 130 Pa. at page 433; and necessarily no complaint can be successfully made of the charge of the learned trial judge, who but adopted the words of authority. See also Penna. Title & Trust Co. v. Meyer, 201 Pa. 299.

The same may be said of the expression of the trial judge that, "a bank or trust company is, under the law, what is known as a quasi public institution." This again is, in substance, the language of the Chief Justice in the Patterson case. With perfect respect for the authority of the high tribunal whence the decision in that case emanated, I think I may, with propriety, remark the expression was not entirely accurate as a description of the true legal relation of a bank with its depositor. In no modern understanding of the term, "quasi public," can a bank, conducted by a corporation, federal or state, by a partnership, or an individual, be accurately described as a quasi public corporation or institution. Whilst it has been many times held the legal relation of a bank to its depositor is that of debtor and creditor, it is also true that a failure, on the part of a bank, to discharge its obligation to a particular depositor, or to all of its depositors, may have an effect much more far reaching than any failure by an individual to pay his debt in the manner and at the time stipulated in his bond. In

this restricted sense a bank might fairly be considered a "quasi public institution." It would seem, and I speak for myself, that in a case like the one at bar, a jury should not be invited to think a bank had violated any duty it owed to the public, because of a simple mistake. But as the matter stands the learned trial judge but followed the blazed trail in giving the instructions complained of. The seventh assignment is overruled.

The ninth and remaining assignment deals with the order of the court below in relation to a reduction of the amount of the verdict if paid within a time named in the order. The defendant—desiring to contest, in the appellate court, the plaintiff's right to recover any sum—declined to avail itself of the benefit of the order. Matters of this kind are, and must necessarily be, largely in the discretion of the trial court.

Whilst the verdict seems to be large, it does not necessarily indicate the jury undertook to award punitive damages. We are of opinion therefore the record discloses no reason for our interference with the judgment.

Judgment affirmed.